706 P.2d 1255

### In the Matter of the Appeal In PIMA COUNTY MENTAL HEALTH NO. MH–1375–2–85.

### No. 2 CA–CIV 5416.

Court of Appeals of Arizona, Division 2, Department A.

Sept. 5, 1985.

Stephen D. Neely, Pima Co. Atty. by Martha M. Durkin, Tucson, for appellee.

Robert B. Fleming, Pima County Public Fiduciary by Alyce Pennington, Tucson, for appellant.

---

## OPINION

FERNANDEZ, Judge.

This is an appeal in a civil commitment case in which the appellant, sometimes also referred to as the patient, was ordered to undergo treatment.

On February 22, 1985, an application for evaluation of the patient was made at the Southern Arizona Mental Health Center, and thereafter a psychiatrist filed a petition for evaluation. Based upon the petition and the screening report, the court ordered the patient to be evaluated on an in-patient basis at Kino Community Hospital. Following evaluation, a petition for court-ordered treatment was filed. Appellant's motions for review of the detention order and to dismiss the petition were denied after a hearing at which the patient testified.

A hearing was held on March 13 and 14, 1985, at which two psychiatrists and three persons acquainted with the patient testified. The patient had testified at length at the probable cause hearing, and the tape of that testimony was considered at the commitment hearing. The court found that the patient was suffering from a mental disorder and was, as a result thereof, a danger to himself and unable or unwilling to accept voluntary treatment. He was ordered to undergo in-patient treatment at Kino Hospital.

Appellant contends that the court erred as follows:

(1) the record does not support the court's finding that appellant was a danger to himself, and

(2) he was denied due process of law during the commitment hearing.

We find no error and affirm.

Appellant cites the First Amendment guarantee of freedom of speech against government action, restraint or limitation as a right that should forbid any interference with his conduct. We fail to see the connection between the right of free speech and the issues in this case.

A.R.S. § 36–501(4) states:

"4. 'Danger to self' means:

"(a) Behavior which, as a result of a mental disorder, constitutes a danger of inflicting serious physical harm upon oneself in the near future, including attempted suicide or the serious threat thereof, if the threat, made in the recent past, be such that, when considered in the light of its context and in light of the individual's previous acts, it is substantially supportive of an expectation that the threat will be carried out.

"(b) Behavior which, as a result of a mental disorder, will, without hospitalization, result in serious physical harm or serious illness to the person in the near future, except that this definition shall not include behavior which establishes only the condition of gravely disabled."

Appellant contends he had made no recent suicide attempts and that the court's ruling was based simply on verbal expressions of despair and confusion. The evidence shows otherwise. Appellant's mother testified about an incident 15 months earlier in which he had taken a shotgun and threatened to kill both himself and his mother. He had been confined to hospitals throughout much of the six-month period following that attempt. During the three-month period immediately preceding the hearing on this petition, he again began to talk of suicide and on one occasion when the police were called he asked them to kill him. She also related an incident when he had called her and said he was going to kill himself unless the government met a list of needs he had drawn up, including providing him with a castle he had sketched. A psychiatric technician from Kino Hospital testified that appellant had spoken of killing himself three weeks before the hearing upon his most recent admission to the hospital and had admitted that if he were not there he would probably try to kill himself. Another psychiatric technician testified that the patient had recently spoken of sharpening the silverware so as to kill himself. Finally, the patient himself told the court that maybe he would hurt himself in the near future "as a result of finding out what [he had] found out," (that he had

started a couple of wars by singing on the radio) and that he did feel suicidal. The two psychiatrists who examined him both determined that appellant was a danger to himself, as did the independent evaluator appointed by the court. We find more than ample evidence to support the court's findings.

At the beginning of the hearing appellant had requested that his attorney withdraw and, after the request was denied, both he and his attorney were permitted to act as counsel. Appellant contends that he was denied due process because the court improperly cut off his cross-examination and limited the presentation of his case to one hour.

The record shows that the court permitted appellant to testify at length regarding his life and recent suicidal thoughts. It shows that appellant used only forty minutes of the hour allotted him. Finally, the record also shows that appellant spent a great deal of time on irrelevant topics.

The trial court has wide discretion in controlling the proceedings. We have reviewed the record and find the appellant's contention to be meritless.

Affirmed.

BIRDSALL, P.J., and HOWARD, J., concur.